AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☑ INFORMATION  ☐ INDICTMENT  
☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**  
NORTHERN DISTRICT OF CALIFORNIA

## OFFENSE CHARGED

Title 18, United States Code,  
Section 371 --- Conspiracy

☐ Petty  
☐ Minor  
☐ Misdemeanor  
☑ Felony

**E-filing**

PENALTY:

Maximum term of imprisonment of 5 years, maximum fine of $250K or twice gross gain/loss, maximum term of supervised release of 3 years, mandatory $100 special assessment

**DEFENDANT - U.S.**

JACQUELINE FROEHLICH-L'HEUREAUX

DISTRICT COURT NUMBER

**CR 07 0337**

**MHP**

## PROCEEDING

Name of Complainant Agency, or Person (&Title, if any)  
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:  
☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM  
**SCOTT N. SCHOOLS**  
☑ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)  
Kyle F. Waldinger

## DEFENDANT

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges  } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of Institution

Has detainer been filed? ☐ Yes  ☐ No  } If "Yes" give date filed

**DATE OF ARREST** ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:  
☐ SUMMONS  ☑ NO PROCESS*  ☐ WARRANT  Bail Amount:

If Summons, complete following:  
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:

SCOTT N. SCHOOLS (SC 9990)
United States Attorney

**E-filing**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**MHP**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR** No. **07 0337** |
| Plaintiff, | VIOLATION: 18 U.S.C. § 371 — Conspiracy to Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| v. | |
| JACQUELINE FROEHLICH-L'HEUREAUX, | |
| Defendant. | SAN FRANCISCO VENUE |

INFORMATION

The United States Attorney charges:

BACKGROUND

At all times relevant to this Information:

1.    Korn/Ferry International ("Korn/Ferry") was an executive search firm headquartered in Los Angeles, California. Korn/Ferry also maintained a Silicon Valley office, located in Redwood City, California (San Mateo County), as well as a San Francisco office. Korn/Ferry was one of the leading providers of executive recruitment services to businesses in the United States.

2.    In performing their work, Korn/Ferry employees relied heavily on the

INFORMATION
[FROEHLICH-L'HEUREAUX]



1  "Searcher" database, a highly confidential and proprietary database of executives,
2  companies, and prior engagements. Using the "Custom Report" feature of the Searcher
3  database, Korn/Ferry employees could quickly sort through information in the database to
4  create targeted reports on executives, companies, and prior engagements for use in
5  candidate development for clients and in client presentations.

6     3.     The information contained in the Searcher database regarding executives,
7  companies, and Korn/Ferry's prior engagements was the product of the efforts of
8  hundreds of Korn/Ferry employees over many years. Korn/Ferry considered the Searcher
9  database to be one of the most comprehensive databases of executive candidates in the
10 world. It also considered the information in Searcher regarding Korn/Ferry's prior
11 engagements to be extremely valuable when initiating subsequent searches for executives
12 for similar positions.

13    4.     Korn/Ferry undertook considerable measures to maintain the confidentiality
14 of the information contained in the Searcher database. These measures included
15 controlling electronic access to the Searcher database, as well as controlling physical
16 access to the computer servers that contained the database. Korn/Ferry employees
17 received unique "usernames" and created passwords for use on the company's computer
18 systems, including for use in accessing the Searcher database. These usernames and
19 passwords were intended to be used by the Korn/Ferry employee only.

20    5.     Korn/Ferry also required all of its employees to enter into agreements that
21 both explained the proprietary nature of the information in Searcher and restricted the use
22 and disclosure of the information in Searcher, except for legitimate Korn/Ferry business.

23    6.     In addition to the measures set out above, Korn/Ferry declared the
24 confidentiality of information in the Searcher database by placing the language
25 "Korn/Ferry Proprietary and Confidential" on every Custom Report generated from
26 Searcher.

27    7.     The individual identified herein as "Individual A" was employed by
28 Korn/Ferry in its Silicon Valley office and elsewhere from approximately April 1996 until

INFORMATION
[FROEHLICH-L'HEUREAUX]          -2-

1   approximately October 2004.

2       8.      After Individual A terminated employment with Korn/Ferry, Individual A
3   planned to start an executive search firm.

4       9.      The defendant Jacqueline Froehlich-L'Heureaux was employed by
5   Korn/Ferry from approximately December 1997 to August 2005. Froehlich-L'Heureaux
6   served as Individual A's executive assistant prior to Individual A's separation from
7   Korn/Ferry. After Individual A's separation from Korn/Ferry, Froehlich-L'Heureaux
8   continued her employment at Korn/Ferry but assisted Individual A in setting up
9   Individual A's new executive search firm.

10      10.     The individuals identified herein as "Individual B" and "Individual C" were
11  also employed at Korn/Ferry until approximately early 2005. After their separation from
12  Korn/Ferry, Individual B and Individual C set up their own executive search firms. In
13  truth, however, both Individual B and Individual C worked with Individual A in setting
14  up Individual A's new executive search firm and assisted, or were assisted by, Individual
15  A in conducting executive searches during approximately the spring and summer of 2005.
16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

INFORMATION
[FROEHLICH-L'HEUREAUX]                      -3-

1   COUNT ONE:        (18 U.S.C. § 371 — Conspiracy to Gain Unauthorized Access to a
                      Protected Computer, Exceed Authorized Access to a Protected
2                     Computer, and Traffic in a Password Allowing Unauthorized Access
                      to a Protected Computer)
3

4       11.    The factual allegations in paragraphs 1 through 10 are re-alleged and

5   incorporated herein as if set forth in full.

6       12.    Beginning on a date unknown, and continuing to on or about August 2,

7   2005, in the Northern District of California, and elsewhere, the defendant

8                       JACQUELINE FROEHLICH-L'HEUREAUX,

9   and others, did knowingly and intentionally combine, conspire, and agree to gain

10  unauthorized access to a protected computer, exceed authorized access to a protected

11  computer, and traffic in a password allowing unauthorized access to a protected

12  computer, in violation of Title 18, United States Code, Sections 1030(a)(4),

13  1030(c)(3)(A), and 1030(a)(6)(A).

14      OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

15      13.    In furtherance of the conspiracy and to effect the objects thereof, the

16  following overt acts, among others, were committed in the Northern District of

17  California, and elsewhere:

18      a.     On May 3, 2005, Individual C sent an e-mail to Individual B and Individual

19  A with an attachment "for the MEMC search . . . ." The attached document

20  ("Semiconductor HR.xls") was a spreadsheet containing approximately 19 executive

21  names with contact information. The header of the spreadsheet contained the text

22  "Korn/Ferry International San Francisco."

23      b.     On or about May 26, 2005, the defendant Jacqueline Froehlich-L'Heureaux

24  received two e-mails from Individual B containing the names of a total of 17 individuals

25  for whom Individual B wanted information from the Searcher database. In the second e-

26  mail, Individual B also requested information regarding a prior Korn/Ferry search

27  engagement. At the time, Froehlich-L'Heureaux was still employed by Korn/Ferry;

28  Individual B was not.

INFORMATION
[FROEHLICH-L'HEUREAUX]          -4-

1    c.    In response to Individual B's e-mails, the defendant Jacqueline Froehlich-

2  L'Heureaux obtained each individual's information from Searcher and obtained the

3  information in Searcher regarding the prior Korn/Ferry search engagement identified by

4  Individual B.

5    d.    The defendant Jacqueline Froehlich-L'Heureaux then copied all of the files

6  containing the requested information onto a CD. Froehlich-L'Heureaux later provided

7  this CD to Individual B.

8    e.    On or about June 3, 2005, the defendant Jacqueline Froehlich-L'Heureaux

9  performed a complex Searcher query for human resource managers working for various

10  companies. In response to Froehlich-L'Heureaux's query, the Searcher database

11  generated a Custom Report yielding approximately 366 executives with their pertinent

12  information.

13    f.    The defendant Jacqueline Froehlich-L'Heureaux then exported the Custom

14  Report to a Microsoft Excel spreadsheet, titled it "Choc Chip Cookie Recipes," and saved

15  the file to her computer Desktop folder. Froehlich-L'Heureaux then copied the "Choc

16  Chip Cookie Recipes" file onto a CD titled "ChocChip Cookies." Froehlich-L'Heureaux

17  later provided this CD to Individual B for use in an executive search that Individual B

18  was performing with Individual A and Individual C for the company MEMC.

19    g.    On or about June 23, 2005, the defendant Jacqueline Froehlich-L'Heureaux

20  performed a Searcher query for senior vice president supply chain managers working at

21  various companies. In response to Froehlich-L'Heureaux's query, the Searcher database

22  generated a Custom Report yielding approximately 1205 executives with their pertinent

23  information.

24    h.    The defendant Jacqueline Froehlich-L'Heureaux then exported the Custom

25  Report to a Microsoft Excel spreadsheet and titled it "Book2." Froehlich-L'Heureaux

26  then proceeded to remove the "Korn/Ferry Proprietary and Confidential" statement

27  (which had been automatically generated by the Searcher program) from the spreadsheet.

28  She saved the "Book2" file to her computer Desktop folder, and then copied the "Book2"

1  file onto a CD titled "Book2 Genesis." Froehlich-L'Heureaux later provided the "Book2"
2  file to Individual C. At the time, Froehlich-L'Heureaux was still employed by
3  Korn/Ferry; Individual C was not.

4      i.     On July 29, 2005, using Individual B's laptop computer, the defendant
5  Jacqueline Froehlich-L'Heureaux remotely logged into Korn/Ferry's computer network
6  with her Korn/Ferry username and password. Once logged in, Froehlich-L'Heureaux
7  returned control of the computer to Individual B. Individual B then proceeded to query
8  Korn/Ferry's Searcher database and download information from that database onto the
9  computer.

10     All in violation of Title 18, United States Code, Section 371.

12  DATED: 5/29/07

                                 SCOTT N. SCHOOLS
                                 United States Attorney

15                                   MATTHEW A. PARRELLA
                                 Chief, CHIP Unit

17  Approved as to Form:

                            KYLE F. WALDINGER
18                              Assistant United States Attorney