SCOTT N. SCHOOLS (SC 9990)
United States Attorney

MARK L. KROTOSKI (CSBN 138549)
Chief, Criminal Division

KYLE F. WALDINGER (ILSB 6238304)
Assistant United States Attorney

   450 Golden Gate Avenue, 11th Floor
   San Francisco, California 94102
   Telephone: (415) 436-6830
   Facsimile: (415) 436-7234

Attorneys for Plaintiff

**FILED**

JUN - 4 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACQUELINE FROEHLICH-L'HEUREAUX, <br><br> Defendant. | No. CR 07-0337 MHP <br><br> PLEA AGREEMENT |

    I, Jacqueline Froehlich-L'Heureaux, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written plea agreement (the "Agreement") pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

<u>The Defendant's Promises</u>

    1.    I agree to plead guilty to the single count of the captioned Information charging me with conspiracy to gain unauthorized access to a protected computer, exceed authorized access to a protected computer, and traffic in a password allowing unauthorized access to a protected computer, in violation of 18 U.S.C. § 371. I agree that the elements of the offense are as follows: (1) beginning and ending on or about the dates set forth in the Information, I agreed with one or more persons to commit at least one of

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]



1  the following crimes: gaining unauthorized access to a protected computer, exceeding
2  authorized access to a protected computer, or trafficking in a password allowing
3  unauthorized access to a protected computer; (2) I became a member of the conspiracy
4  knowing of at least one of its objects and intending to help accomplish it; and (3) one of
5  the members of the conspiracy performed at least one overt act for the purpose of carrying
6  out the conspiracy, with the jurors agreeing on a particular overt act that was committed.
7  I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison sentence | | 5 years |
| b. | Maximum fine | | $250,000 (or twice the value of the property involved in the transaction, whichever is greater) |
| c. | Maximum supervised release term | | 3 years |
| d. | Mandatory special assessment | | $100 |
| e. | Restitution | | To be determined by the Court |

15  2.  I agree that I am guilty of the offenses to which I will plead guilty, and I
16  agree that the following facts are true: Korn/Ferry International ("Korn/Ferry") is an
17  executive recruiting company based in Los Angeles, with offices in the California Silicon
18  Valley and throughout the world. From approximately December 1997 to August 2005, I
19  was employed by Korn/Ferry as an administrative assistant in the firm's San Francisco
20  and Silicon Valley offices. For much of that time, I served as an executive assistant to an
21  individual identified in the Information as "Individual A."
22  Korn/Ferry employees received unique usernames and created passwords for use
23  on the company's computer systems, including for use in accessing Korn/Ferry's
24  "Searcher" database. These usernames and passwords were intended to be used by the
25  employee only. I admit that Korn/Ferry's computer system constituted a "protected
26  computer" under 18 U.S.C. § 1030(e)(2)(B), because that computer system was used by
27  Korn/Ferry in conducting interstate and foreign commerce and communication.
28  Individual A resigned from Individual A's position at Korn/Ferry in about October

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]          -2-

1   2004. It was my understanding that, under Individual A's separation agreement with
2   Korn/Ferry, Individual A was prohibited from engaging in a competing business with
3   Korn/Ferry until approximately November 2005. After Individual A's resignation,
4   Individual A worked on forming a competing executive search firm to Korn/Ferry.
5   Before Individual A left Korn/Ferry, Individual A asked me to begin doing work for
6   Individual A's new business, although I would continue to work at Korn/Ferry for some
7   time. I agreed to do so and began doing work for that incipient business while I was still
8   employed at Korn/Ferry. Other members or employees of the planned new business
9   included the individuals identified as "Individual B" and "Individual C" in the
10  Information, among others. Both Individual B and Individual C worked closely with
11  Individual A on client matters at Korn/Ferry prior to Individual A's separation from
12  Korn/Ferry. Individual C left Korn/Ferry's employment in or about January 2005.
13  Individual B left Korn/Ferry's employment in or about March 2005. After their departure
14  from Korn/Ferry, my understanding is that Individual B and Individual C were doing
15  work for Individual A.
16         On July 29, 2005, as alleged in ¶ 13.i of the Information, I was present in the
17  offices of Individual A's new business in San Francisco, California. At the time, I was
18  still employed by Korn/Ferry International. Individual B was also present in those offices
19  that day. At Individual B's request, I agreed to, and did, remotely log into Korn/Ferry's
20  computer network using the username assigned to me by Korn/Ferry and my password. I
21  did so from Individual B's computer. Once logged in, I left the room. It is my
22  understanding that Individual B then proceeded to query Korn/Ferry's Searcher database
23  and download information from that database onto Individual B's computer. I knew at
24  that time that Individual B was not authorized to access Korn Ferry's database, nor was I
25  authorized to allow Individual B to use my username and password to access that
26  database. I knew that the use of Korn/Ferry's database in this manner was in
27  contravention of Korn/Ferry's internal policies and terms of computer use. I knew that
28  Korn/Ferry closely guarded the information in its Searcher database and that the only way

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]          -3-

for Individual B or anyone at Individual A's new business to get information from this database was to defraud Korn/Ferry's computer system into believing that the person reviewing the database was an employee of Korn/Ferry (*i.e.*, me).

In May and June 2005 (including on May 26, 2005, June 3, 2005, and June 23, 2005 as alleged in ¶ 13.b through ¶ 13.h of the Information), I also agreed to obtain information from Korn/Ferry's Searcher database for what I understood was either Individual A's, Individual B's, or Individual C's use.  Further, on at least one occasion in 2005 when I was still working at Korn/Ferry, I was on the telephone with Individual A and Individual C.  During that conversation, Individual C asked me to obtain information from Searcher, which I believe was a telephone number or numbers.  I provided the requested information to Individual C.  After doing so, I heard Individual A ask me "What are we going to do when you leave Korn/Ferry?"  On another occasion in 2005, I was working at Korn/Ferry and was on the telephone with Individual A and Individual C.  During that telephone call, Individual A asked me to retrieve position specifications for a particular job function from Korn/Ferry's computer system, which I subsequently did, after an additional conversation with Individual A.

I agree that my actions affected interstate commerce because Korn/Ferry had offices in numerous states within the United States and because the Searcher database was available nationwide over the Internet.

3.  I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4.  I agree to give up my right to appeal my conviction, the judgment, and orders of the Court.  I also agree to waive any right I may have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution, except that I specifically reserve my right to appeal the Court's determination of loss for purposes of

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]          -4-

the Sentencing Guidelines.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255, or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after I am sentenced, except for a claim that my constitutional right to the effective assistance of counsel was violated.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered.

7. I agree that the Court will calculate my sentencing range under the Sentencing Guidelines. I understand that the Court, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I agree that, regardless of any other provision in this Agreement, the government may and will provide to the Court and the Probation Office all information relevant to the charged offenses or the sentencing decision. I understand that the government may arrive at a higher Guidelines calculation than I do. I also agree that the Court will not be bound by the Sentencing Guidelines calculations recommended by either of the parties, and that the Court may conclude that a higher guideline range applies to me, and, if it does, I will not be entitled, nor will I ask, to withdraw my guilty plea.

8. In return for the government's promises set out below, I agree to pay restitution in an amount to be set by the Court, and I agree that the amount of restitution may not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree that I will make a good faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. Before or after sentencing, I will, upon request of the Court, the government, or the U.S. Probation Office, provide accurate and complete financial information, submit sworn statements and give depositions under oath concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution. I agree to pay the special assessment at the time of sentencing.

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]            -5-

9. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

    a. I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury or at any trial or other proceeding;

    b. I will provide all documents and other material asked for by the government;

    c. I will testify truthfully at any grand jury, court or other proceeding as requested by the government;

    d. I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

    e. I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

    f. I will not reveal my cooperation, or any information related to it, to anyone without prior consent of the government.

10. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

11. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence; violate the terms of my pretrial release (if any); not to intentionally provide false information or testimony to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree that, if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises, but I will not be released from my guilty plea.

12. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other

1  government agency or in Court, whether or not made pursuant to the cooperation
2  provisions of this Agreement, may be used in any way; (b) I waive any and all claims
3  under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal
4  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule,
5  to suppress or restrict the use of my statements, or any leads derived from those
6  statements; and (c) I waive any defense to any prosecution that it is barred by a statute of
7  limitations, if the limitations period has run between the date of this Agreement and the
8  date I am indicted.

9  13.  I agree that this Agreement contains all of the promises and agreements
10 between the government and me, and I will not claim otherwise in the future.

11 14.  I agree that this Agreement binds the U.S. Attorney's Office for the
12 Northern District of California only, and does not bind any other federal, state, or local
13 agency.

14 The Government's Promises

15 15.  The government agrees to move to dismiss any open charges pending
16 against the defendant in the captioned indictment at the time of sentencing.

17 16.  The government agrees not to file any additional charges against the
18 defendant that could be filed as a result of the investigation that led to the pending
19 indictment.

20 17.  The government agrees not to use any statements made by the defendant
21 pursuant to this Agreement against her, unless the defendant fails to comply with any
22 promises in this Agreement.

23 18.  If, in its sole and exclusive judgment, the government decides that the
24 defendant has cooperated fully and truthfully, provided substantial assistance to law
25 enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied
26 fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18
27 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and
28 recommends a downward departure.

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]          -7-

...
...

1    19.    Based on the information now known to it, the government will not oppose
2 a downward adjustment of three levels for acceptance of responsibility under U.S.S.G.
3 § 3E1.1 provided that I forthrightly admit my guilt, cooperate with the Court and the
4 Probation Office in any presentence investigation ordered by the Court, and continue to
5 manifest an acceptance of responsibility through and including the time of sentencing.

6 The Defendant's Affirmations

7    20.    I confirm that I have had adequate time to discuss this case, the evidence,
8 and this Agreement with my attorney, and that he has provided me with all the legal
9 advice that I requested.

10   21.    I confirm that while I considered signing this Agreement and, at the time I
11 signed it, I was not under the influence of any alcohol, drug, or medicine.

12   22.    I confirm that my decision to enter a guilty plea is made knowing the
13 charges that have been brought against me, any possible defenses, and the benefits and
14 possible detriments of proceeding to trial. I also confirm that my decision to plead guilty
15 is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

17 Dated: 6/4/07            _____
                            JACQUELINE FROEHLICH-L'HEUREAUX
18                          Defendant

20                          SCOTT N. SCHOOLS
                            United States Attorney

22 Dated: 6/4/2007          _____
                            KYLE F. WALDINGER
23                          Assistant United States Attorney

26   I have fully explained to my client all the rights that a criminal defendant has and
27 all the terms of this Agreement. In my opinion, my client understands all the terms of this
28 Agreement and all the rights she is giving up by pleading guilty, and, based on the

PLEA AGREEMENT
CR 07-0337 MHP [**UNDER SEAL**]        -8-

1  information now known to me, her decision to plead guilty is knowing and voluntary.

2
3  Dated: June 1, 2007
4                                          LELAND B. ALTSCHULER
                                           Attorney for Defendant