AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☑ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

— OFFENSE CHARGED —

See Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☑ Felony

PENALTY:

See Attachment

E-filing

— PROCEEDING —

Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:   } SHOW DOCKET NO.
   ☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant
☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under   } MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on
THIS FORM          **SCOTT N. SCHOOLS**
☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)      Kyle F. Waldinger

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

FILED

— DEFENDANT - U.S. —

AUG 3 1 2007

▶ MARK JACOBSON

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT NUMBER

CR 07 0568

MMC

— DEFENDANT —

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☑ If not detained give date any prior summons was served on above charges _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges   } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed _____

DATE OF ARREST ▶   Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶ TO U.S. CUSTODY   Month/Day/Year _____

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS ☑ NO PROCESS* ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____

Before Judge: _____

Comments:

## Attachment
## United States v. Mark Jacobson

### Offense Charged:

18 U.S.C. §§ 1832(a)(5) and 371 — Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer

### Maximum Penalties:

10 years' imprisonment; $250,000 fine, or twice the gross gain or gross loss, whichever is greater; 3 years of supervised release; $100 mandatory special assessment

1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney

2

3

4

5

6                          E-filing

7

8              UNITED STATES DISTRICT COURT          MMC

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,    ) CR No. 07    0568
                                 )
13        Plaintiff,             )    VIOLATION: 18 U.S.C. §§ 1832(a)(5)
                                 )    and 371 — Conspiracy to Misappropriate,
14        v.                     )    Receive, Possess, and Transmit Trade
                                 )    Secrets, Gain Unauthorized Access to a
15                               )    Protected Computer, Exceed Authorized
    MARK JACOBSON,               )    Access to a Protected Computer, and
16                               )    Traffic in a Password Allowing
          Defendant.             )    Unauthorized Access to a Protected
17                               )    Computer
                                 )
18  _____  )    SAN FRANCISCO VENUE

19                  I N F O R M A T I O N

20     The United States Attorney charges:

21                      BACKGROUND

22     At all times relevant to this Information:

23     1.     Korn/Ferry International ("Korn/Ferry") was an executive search firm

24  headquartered in Los Angeles, California.  Korn/Ferry also maintained a Silicon Valley

25  office, located in Redwood City, California (San Mateo County), as well as a San

26  Francisco office.  Korn/Ferry was one of the leading providers of executive recruitment

27  services to businesses in the United States.

28     2.     In performing their work, Korn/Ferry employees relied heavily on the

INFORMATION
[JACOBSON]

1    "Searcher" database, a highly confidential and proprietary database of executives and

2    companies. This database also contained information regarding search engagements that

3    Korn/Ferry had conducted for clients in the past. Using the "Custom Report" feature of

4    the Searcher database, Korn/Ferry employees could quickly sort through information in

5    the database to create targeted reports on executives, companies, and prior engagements

6    for use in candidate development for clients and in client presentations.

7         3.      The information contained in the Searcher database regarding executives,

8    companies, and Korn/Ferry's prior engagements was the product of the efforts of

9    hundreds of Korn/Ferry employees over many years. Korn/Ferry considered the Searcher

10    database to be one of the most comprehensive databases of executive candidates in the

11    world. It also considered the information in Searcher regarding Korn/Ferry's prior

12    engagements to be extremely valuable when initiating subsequent searches for executives

13    for similar positions.

14         4.      Korn/Ferry undertook considerable measures to maintain the confidentiality

15    of the information contained in the Searcher database. These measures included

16    controlling electronic access to the Searcher database, as well as controlling physical

17    access to the computer servers that contained the database. Korn/Ferry employees

18    received unique usernames and created passwords for use on the company's computer

19    systems, including for use in accessing the Searcher database. These usernames and

20    passwords were intended to be used by the Korn/Ferry employee only.

21         5.      Korn/Ferry also required all of its employees to enter into agreements that

22    both explained the proprietary nature of the information in Searcher and restricted the use

23    and disclosure of the information in Searcher, except for legitimate Korn/Ferry business.

24         6.      In addition to the measures set out above, Korn/Ferry declared the

25    confidentiality of information in the Searcher database by placing the language

26    "Korn/Ferry Proprietary and Confidential" on every Custom Report generated from

27    Searcher.

28         7.      The individual identified herein as "Individual A" was employed by

INFORMATION
[JACOBSON]                  -2-

1  Korn/Ferry in its Silicon Valley office and elsewhere from approximately April 1996 until
2  approximately October 2004.

3      8.    After Individual A terminated employment with Korn/Ferry, Individual A
4  planned to start an executive search firm.

5      9.    The defendant Mark Jacobson was employed at Korn/Ferry from
6  approximately January 2001 to approximately March 2005.  After his separation from
7  Korn/Ferry, Jacobson worked with Individual A in setting up Individual A's executive
8  search firm and either assisted, or was assisted by, Individual A in conducting executive
9  searches during approximately the spring and summer of 2005 in the Northern District of
10  California.

11      10.    The individual identified herein as "J.F." was employed by Korn/Ferry from
12  approximately December 1997 to approximately August 2005.  J.F. served as Individual
13  A's executive assistant prior to Individual A's separation from Korn/Ferry.  After
14  Individual A's separation from Korn/Ferry, J.F. continued to be employed at Korn/Ferry
15  but assisted Individual A in setting up Individual A's new executive search firm in the
16  Northern District of California.

17      11.    The individual identified herein as "Individual C" was also employed at
18  Korn/Ferry until approximately early 2005.  After Individual C's separation from
19  Korn/Ferry, Individual C set up an executive search firm.  In truth, however, and as with
20  Jacobson, Individual C worked with Individual A in setting up Individual A's executive
21  search firm and either assisted, or was assisted by, Individual A in conducting executive
22  searches during approximately the spring and summer of 2005.

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

INFORMATION
[JACOBSON]                    -3-

## THE CONSPIRACY

12.    Beginning on a date unknown, and continuing to on or about August 2, 2005, in the Northern District of California, and elsewhere, the defendant

MARK JACOBSON,

did knowingly and intentionally conspire and agree with J.F. and other persons to commit the following offenses:  misappropriation, receipt, possession, and transmission of trade secrets, in violation of 18 U.S.C. §§ 1832(a)(1), (a)(2) and (a)(3); unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(4); exceeding authorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(4); and trafficking in a password allowing unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(6)(A).

13.    It was part of the conspiracy that the co-conspirators would and did knowingly, and with intent to defraud, obtain things of value from Korn/Ferry's computer system, including Korn/Ferry trade secrets.

14.    It was further part of the conspiracy that the co-conspirators would and did steal, and without authorization knowingly take by fraud, artifice, and deception, Korn/Ferry trade secrets.

15.    It was further part of the conspiracy that the co-conspirators would and did: (a) misappropriate Korn/Ferry trade secrets; (b) receive and possess stolen trade secrets; and (c) transmit Korn/Ferry trade secrets to each other — all so that they could retain clients and place candidates as part of their executive search activities.

16.    It was further part of the conspiracy that co-conspirators would use J.F.'s Korn/Ferry username and password either themselves, or through J.F., to access Korn/Ferry's computer system and its Searcher database for the purpose of obtaining information, including trade secrets, from that computer system and that database.

/ / /

/ / /

/ / /

INFORMATION
[JACOBSON]                                -4-

1    OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

2        17.    In furtherance of the conspiracy and to effect the objects thereof, the

3    following overt acts, among others, were committed in the Northern District of

4    California, and elsewhere:

5        a.    Beginning on a date unknown, and continuing to in or about August 2005,

6    J.F. stole things of value, including trade secrets, from Korn/Ferry.

7        b.    Beginning on a date unknown, and continuing to in or about August 2005,

8    J.F. provided trade secrets and things of value stolen from Korn/Ferry to defendant

9    Jacobson and others for their use in executive searches.

10        c.    On or about May 3, 2005, Individual C sent an e-mail to the defendant

11    Jacobson and Individual A with an attachment "for the MEMC search . . . ." The attached

12    document ("Semiconductor HR.xls") was a spreadsheet containing approximately 19

13    executive names with contact information. The header of the spreadsheet contained the

14    text "Korn/Ferry International San Francisco."

15        d.    On or about May 26, 2005, the defendant Jacobson sent two e-mails to J.F.

16    containing the names of a total of approximately 17 individuals regarding whom J.F. was

17    to obtain information from the Searcher database. Jacobson obtained these names from

18    Individual A. In the second e-mail, Jacobson also requested information regarding a prior

19    Korn/Ferry search engagement. At the time, J.F. was still employed by Korn/Ferry;

20    Jacobson was not.

21        e.    In response to the defendant Jacobson's e-mails, J.F. obtained each

22    individual's information from Searcher and obtained the information in Searcher

23    regarding the prior Korn/Ferry search engagement identified by Jacobson.

24        f.    J.F. then copied all of the files containing the requested information onto a

25    CD. J.F. later provided this CD to Jacobson. Individual A later used some or all of the

26    information obtained from Searcher in a "pitch" meeting with representatives from the

27    company Polycom in which Individual A was attempting to be retained by that company

28    to conduct an executive search.

INFORMATION
[JACOBSON]                    -5-

1        g.      At the defendant Jacobson's request, on or about June 3, 2005, J.F.

2   performed a complex Searcher query for human resource managers working for various

3   companies.  In response to J.F.'s query, the Searcher database generated a Custom Report

4   yielding approximately 366 executives with their pertinent information.

5        h.      J.F. then exported the Custom Report to a Microsoft Excel spreadsheet

6   titled "Choc Chip Cookie Recipes," and saved the file to her computer Desktop folder.

7   J.F. then copied the "Choc Chip Cookie Recipes" file onto a CD titled "ChocChip

8   Cookies."  J.F. later provided this CD to the defendant Jacobson for use in an executive

9   search that he was performing with Individual A and Individual C for the company

10  MEMC.  J.F. had previously used the "ChocChip Cookies" identifier (or a variation

11  thereof) when providing similar files containing information from Korn/Ferry's computer

12  system to Individual C.

13       i.      On or about June 23, 2005, J.F. performed a Searcher query for senior vice

14  president supply chain managers working at various companies.  In response to J.F.'s

15  query, the Searcher database generated a Custom Report yielding approximately 1205

16  executives with their pertinent information.

17       j.      J.F. then exported the Custom Report to a Microsoft Excel spreadsheet and

18  titled it "Book2."  J.F. then proceeded to remove the "Korn/Ferry Proprietary and

19  Confidential" statement (which had been automatically generated by the Searcher

20  program) from the spreadsheet.  She saved the "Book2" file to her computer Desktop

21  folder, and then copied the "Book2" file onto a CD titled "Book2 Genesis."  J.F. later

22  provided the "Book2" file to Individual C.  At the time, J.F. was still employed by

23  Korn/Ferry; Individual C was not.

24       k.      On or about July 29, 2005, using the defendant Jacobson's computer located

25  in Individual A's new offices in San Francisco, J.F. remotely logged into Korn/Ferry's

26  computer network with her Korn/Ferry username and password.  Once logged in, J.F.

27  returned control of the computer to Jacobson.  Jacobson then proceeded to query

28  Korn/Ferry's Searcher database and download information from that database onto the

INFORMATION
[JACOBSON]                        -6-

1    computer.

2        All in violation of Title 18, United States Code, Sections 1832(a)(5) and 371.

3

4    DATED:   8-29-07                        SCOTT N. SCHOOLS
                                             United States Attorney
5

6

7                                            BRIAN J. STRETCH
                                             Chief, Criminal Division
8

9    Approved as to Form:
                          KYLE F. WALDINGER
10                        Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INFORMATION
[JACOBSON]                      -7-